# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON AREA MEDICAL
CENTER, INC.,

    Plaintiff,

v.

MARIETTA MEMORIAL HOSPITAL and
MARIETTA AREA HEALTHCARE, INC.,

    Defendants.

No. 5:26-cv-6 Bailey

ELECTRONICALLY
FILED
1/09/2026
U.S. DISTRICT COURT
Northern District of WV

## VERIFIED COMPLAINT

AND NOW, comes Plaintiff, Charleston Area Medical Center, Inc., ("Plaintiff" or "CAMC") and files the following Verified Complaint against Marietta Memorial Hospital and Marietta Area Healthcare, Inc. ("Defendants" or "Marietta"), stating as follows:

## BACKGROUND

1. Through the investment of millions of dollars, CAMC is the owner of a highly successful primary care practice serving patients throughout the Mid-Ohio Valley, a region designated as a Primary Care Health Professional Shortage Area by the U.S. Health Resources and Services Administration.

2. This case involves the intentional efforts of Marietta, CAMC's direct competitor, to thwart CAMC's investments to support patient care in the region by employing Dr. Jason Barton, D.O., a physician currently employed by CAMC, and, upon information and belief, encouraging Dr. Barton to solicit other CAMC employees to work with him.

3. As detailed below, CAMC was forced to file this lawsuit to put a halt to Marietta's tortious interference with Dr. Barton's contractual obligations to CAMC and to stanch the irreparable harm that has already occurred – presently continues to occur – and will continue to

occur – if Marietta is permitted to continue its illegal interference with Dr. Barton's contract with CAMC.

4. Headquartered in Charleston, West Virginia, the CAMC Health System was created to meet the challenges of providing the highest level of health services to West Virginians, pulling together several hospitals with a history of community service dating back to 1895. CAMC is the flagship of the CAMC Health System.

5. Established in 1972, CAMC is a nonprofit, regional referral center made up of four hospitals: CAMC General Hospital, CAMC Memorial Hospital, CAMC Teays Valley Hospital and CAMC Women and Children's Hospital. CAMC Health System includes CAMC Greenbrier Valley Medical Center, CAMC Plateau Medical Center, and CAMC Charleston Surgical Hospital, which together with CAMC have 1,138 inpatient beds, as well as the CAMC Institute for Academic Medicine and the CAMC Foundation.

6. More than 1,500 providers are members of the medical staff of CAMC, which is also West Virginia's premiere medical teaching facility, hosting, on any given day, more than 1,000 students, interns, residents and fellows in programs leading to degrees or certifications in healthcare professions.

7. As a result of Marietta's actions, CAMC has suffered and will continue to suffer irreparable harm absent action from this Court. CAMC brings this action to (a) protect its patient and employee relationships and goodwill; (b) prevent Marietta from interfering with Dr. Barton's contractual obligations regarding competitive activity; and (c) prohibit Marietta from unfairly competing with CAMC.

## THE PARTIES

8. CAMC is a West Virginia non-profit corporation duly authorized to conduct business in the State of West Virginia, with its principal place of business located in Charleston, Kanawha County, West Virginia.

9. Defendants are not-for-profit corporations, formed under Ohio law with their principal place of business located in Ohio.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this civil action under 28 U.S.C. § 1332 because CAMC and Marietta are citizens of different states and the amount in controversy exceeds $75,000.

11. This Court has personal jurisdiction over Marietta because Marietta has the required minimum contact with this forum to establish personal jurisdiction. Marietta (a) is registered to do and does business in West Virginia; and (b) tortiously interfered with Dr. Barton's contractual obligations to West Virginia-headquartered CAMC with full knowledge that Dr. Barton had a contract with CAMC subject to the laws of West Virginia.

12. Based on Marietta's contacts as described herein, it was wholly foreseeable that it would be haled into court in the United States District Court for the Northern District of West Virginia as a substantial part of the events giving rise to the claims in this action occurred in this District. Defendant coordinated its tortious conduct within this District and its actions directly impacted CAMC's business in this District.

## FACTUAL ALLEGATIONS

**CAMC's Acquisition of PARS and Employment of Dr. Barton**

13. In early 2024, CAMC acquired the practice known as PARS Neurosurgical Associates, Inc. ("PARS") in an asset purchase.

14. In connection with its multimillion-dollar purchase of PARS, CAMC acquired the practice, the building in which the practice operated, and separately invested approximately $750,000 in a buildout of the practice's facilities, equipment, and electronic medical records systems to modernize the practice for integration into CAMC's healthcare delivery system. CAMC's acquisition of PARS expanded access to underserved populations because as a non-profit, CAMC's charity care and financial assistance policies would extend to its patients living in the mid-Ohio valley.

15. CAMC made these investments and improvements to PARS to retain and attract talent for the practice and ensure its success moving forward.

16. CAMC also made these investments and improvements to PARS based upon the commitments made by its physicians to become employed with CAMC post-acquisition.

17. Dr. Jason Barton, D.O. ("Dr. Barton") as well as other physicians, professional medical assistants and staff, were employed by PARS and, at the time of the acquisition, were offered and accepted employment with CAMC.

18. CAMC offered Dr. Barton an employment package which included an Employment Agreement that he entered into in March 2024 (the "Agreement"), attached hereto as **Exhibit 1**.

19. As part of his employment offer, CAMC provided Dr. Barton with an increased compensation package in comparison to what he previously received from PARS.

20. Dr. Barton has been employed by CAMC since March 2024 and continues to be employed by CAMC to date.

**Dr. Barton's Contractual Commitments to CAMC**

21. In Section 15 of the Agreement, Dr. Barton agreed that, during his employment with CAMC, he will "work exclusively for CAMC and will not, without CAMC's advance written

consent, engage in any outside professional activities or otherwise compete with any of the lawful activities of CAMC." (Agreement § 15.)

22. Dr. Barton also agreed in Section 16 of the Agreement that he would "not work in any professional medical or administrative capacity within a thirty (30) road mile radius of the CAMC location to which [he is] primarily assigned . . ." for the one-year period after termination of his CAMC employment by him. (*Id.* § 16.)

23. In Section 14 of the Agreement, Dr. Barton agreed that for a period of two (2) years following the expiration or termination of the Agreement he would not "solicit[], recruit[], engag[e], or employ[] any individual who was employed or engaged by CAMC or its affiliates in any capacity during the term of this Agreement." (*Id.* § 14.)

24. On October 27, 2025, Dr. Barton tendered his 90-day notice of resignation to CAMC.

25. Dr. Barton remains employed and he is being paid his salary and benefits by CAMC through January 25, 2026. (*See* Agreement § 18.)

26. Following his resignation, on November 4, 2025, CAMC sent Dr. Barton a letter acknowledging receipt of his resignation and reminding him of his obligations under the Agreement, including those related to the non-competition and non-solicitation provisions contained therein. CAMC's November 4, 2025, letter is attached hereto as **Exhibit 2**.

**Marietta Employs Dr. Barton**

27. Despite Dr. Barton's contractual commitments and fiduciary duties to CAMC, Dr. Barton is currently employed by both CAMC **and** Marietta.

28. Marietta is a direct competitor with CAMC.

29. Marietta is located within the 30-road-mile radius of the CAMC location to which Dr. Barton was primarily assigned, i.e., 1212 Garfield Ave., Parkersburg, West Virginia 26101.

30. Marietta routinely makes efforts to poach CAMC's physicians, professional medical assistants, and staff instead of building and developing its own medical care service provider practices.

31. Marietta has unabashedly made the following announcement of Dr. Barton's employment with Marietta despite his current and continuing employment with CAMC:



32. Marietta also wasted no time and already has multiple digital billboards displaying Dr. Barton and his Marietta practice in high-traffic areas in the region:







33.     During and for one year following the end of his 90-day notice period with CAMC (or until January 25, 2027), Dr. Barton is contractually obligated to refrain from working in a professional medical or administrative capacity within a 30-road-mile radius of 1212 Garfield Avenue, Parkersburg, West Virginia.

34. Dr. Barton's employment with Marietta at 2434 Richmiller Lane, in Belpre, Ohio – less than five (5) road miles from his CAMC location – is a violation of his obligations to CAMC.

35. Upon information and belief, Marietta also has solicited and/or encouraged Dr. Barton to solicit other employees and professional medical assistants to leave the practice at CAMC to become employed by Marietta to work with Dr. Barton.

36. On December 15, 2025, CAMC, through counsel, sent a cease-and-desist letter to Marietta demanding that it honor Dr. Barton's obligations to CAMC and immediately cease and desist Dr. Barton's employment with Marietta in violation of his obligations to CAMC. The December 15, 2025, letter is attached hereto as **Exhibit 3**.

37. CAMC requested a response to its letter by December 19, 2025.

38. On December 19, 2025, Marietta responded with a short email in which it gave no indication that it would cease its employment of Dr. Barton or its interference with his contractual obligations to CAMC. Marietta's December 19, 2025, email is attached hereto as **Exhibit 4**.

39. Subsequently, on January 6, 2026, Marietta posted Dr. Barton as a provider on its website explaining his background and practice to patients and the general public. *See* https://www.mhsystem.org/our-providers/barton-jason-do/ (last visited Jan. 9, 2026).

40. Marietta also posted a YouTube video for patients and the general public to learn more about Dr. Barton. *See* https://www.mhsystem.org/media/get-to-know-jason-barton-do/ (last visited Jan. 9, 2026).

41. These efforts by Marietta to publicize and promote Dr. Barton and his practice were made after CAMC sent Marietta the cease-and-desist letter.

42. With full knowledge of Dr. Barton's contractual obligations, Marietta has continued to employ and market Dr. Barton, making it clear that Marietta continues to enable Dr. Barton in the violation of his legal obligations to CAMC.

**CAMC is Entitled to Preliminary and Permanent Injunctive Relief Against Marietta**

43. CAMC seeks immediate relief in the form of a preliminary injunction against Marietta and asks this Court to enjoin Marietta from employing Dr. Barton for the remainder of his employment with CAMC and for one year following the termination of his Agreement.

44. CAMC is likely to succeed on the merits of this case because it has a valid and enforceable agreement with Dr. Barton, it has legitimate business interests to protect, and Marietta's inducement of Dr. Barton's breaches of his contractual obligations to CAMC are open, blatant, and obvious.

45. CAMC's patient relationships, goodwill, market share, business opportunities, competitive advantage, and relations with its remaining employees will be irreparably harmed if a preliminary and permanent injunction is not entered.

46. CAMC will suffer far greater harm if a preliminary and permanent injunction is not granted than Marietta will suffer if one is granted. For Dr. Barton's part, he will suffer no harm but simply be precluded from violating the promises he made to CAMC.

47. Granting a preliminary injunction would serve the public interest.

## COUNT I
## TORTIOUS INTERFERENCE WITH CONTRACT

48. CAMC incorporates by reference the preceding paragraphs of the Verified Complaint as if set forth fully herein.

49. Dr. Barton executed a valid and enforceable Agreement.

50. Marietta knew of Dr. Barton's contractual obligations to CAMC.

51. Marietta knowingly, intentionally, unjustifiably, and in bad faith induced Dr. Barton to breach and to continue to breach his Agreement with CAMC.

52. As described herein, Marietta has interfered with Dr. Barton's contractual obligations to CAMC.

53. Marietta's conduct was not privileged.

54. Marietta's interference with Dr. Barton's contractual obligations to CAMC is causing and will continue to cause CAMC to suffer irreparable harm and damage.

## **PRAYER FOR RELIEF**

WHEREFORE, CAMC respectfully prays the Court:

(a) For a judgment in its favor and against Marietta on all claims herein;

(b) For an award of damages in an amount to be determined by the trier of fact, together with pre- and post-judgment interest thereon at the maximum legal rate;

(c) For injunctive relief in the form of an order:

    (i) Prohibiting Marietta from employing Dr. Barton and requiring Marietta to honor and not interfere with the terms of the Agreement; and

    (ii) Requiring Marietta to provide quarterly affidavits for a period of one year verifying that it has complied with its obligations under the Order.

(d) For additional equitable relief in the form of an order disgorging Marietta of any and all profits or benefits realized directly or indirectly as a result of or in connection with any breach of the Agreement;

(e) For an award of actual and exemplary damages;

(f) That the costs of this action be taxed to Marietta;

(g) For a trial by jury on all issues so triable; and

(h) For such other and further relief as the Court may deem just and proper.

Dated: January 9, 2026

Respectfully submitted,

BUCHANAN INGERSOLL & ROONEY LLP

By: */s/ Kathleen Jones Goldman*
Kathleen Jones Goldman (WV Bar No. 6917)
kathleen.goldman@bipc.com
Erin J. McLaughlin (WV Bar No. 10464)
erin.mclaughlin@bipc.com
Nicholas J. Bell (*Pro Hac Vice Forthcoming*)
nicholas.bell@bipc.com
Harrison K. Zelt (*Pro Hac Vice Forthcoming*)
harrison.zelt@bipc.com

Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA  15219
Telephone: (412) 562-8800
Facsimile: (412) 562-1041

***Attorneys for Plaintiff, Charleston Area Medical Center, Inc.***

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON AREA MEDICAL
CENTER, INC.,

        Plaintiff,

v.

MARIETTA MEMORIAL HOSPITAL and
MARIETTA AREA HEALTHCARE, INC.,

        Defendants.

No. 5:26-cv-6 Bailey

## VERIFICATION

I, Jeffrey H. Goode, verify that I am the Senior Vice President for Ambulatory Services and South Region Hospitals of Plaintiff, Charleston Area Medical Center, Inc. ("CAMC") and that I am authorized to execute this Verification on CAMC's behalf. Having read the foregoing Verified Complaint, I verify that the statements therein are based on information of which I have personal knowledge or that I have gathered from and confirmed with other agents of CAMC. While the language of the pleading is that of counsel, I verify that the averments contained in the foregoing Verified Complaint are true and correct to the best of my knowledge, information and belief.

I understand that this Verification is made subject to the penalties relating to unsworn falsification to authorities, 28 U.S.C. § 1746.

Dated: January 9, 2026

                                                                                   Jeffrey H. Goode